UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
CASIMIR GRIFFIN,

                                        Plaintiff,

        - against -

FACEBOOK, DET. JESICA BROOKS #467,

                                        Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 19-CV-7821 (CS)

<u>Appearances</u>:

Casimir P. Griffin
Goshen, New York
*Pro Se Plaintiff*

Mark S. Pincus
Travis J. Mock
Pincus Law LLC
New York, New York
*Counsel for Defendant Facebook*

Kimberly Hunt Lee
McCabe & Mack LLP
Poughkeepsie, New York
*Counsel for Defendant Brooks*

<u>Seibel, J.</u>

        Before the Court are the motion to dismiss of Defendant Detective Jessica Brooks

("Defendant Brooks"), (Doc. 31), and the motion to dismiss or transfer of Defendant Facebook,

Inc. ("Defendant Facebook"), (Doc. 38).[1]  For the following reasons, Defendants' motions to

dismiss are GRANTED, and Defendant Facebook's motion to transfer venue is DENIED as

moot.

_____

        [1] The Court adopts Defendants' spellings of their names.

## I.    **BACKGROUND**

I accept as true the facts, but not the conclusions, set forth in Plaintiff's original Complaint, (Doc. 1 ("Compl.")), First Amended Complaint, (Doc. 21 ("FAC")), Second Amended Complaint, (Doc. 28 ("SAC")), and opposition to Defendants' motions to dismiss, (Docs. 43, 47-48).[2]

In 2010, the Newburgh Police Department and Plaintiff's parole officer accessed his Facebook account without permission.  (FAC at 6.)  In 2015, Plaintiff's Facebook account was accessed and his "personal sensitive information" was stolen, resulting in "damaging charges" to his credit history, the use of his social security number by "several different people," and the purchase of a car using his information.  (SAC at 5.)[3]  In 2016, Plaintiff learned that his employer had full access to his Facebook account without his consent.  (*Id.* at 6.)  His manager and another employee told him that they believed he "was being tracked, monitored and possibly more by the City of Newburgh Police Department."  (*Id.*)  Plaintiff's knowledge that someone had his log-in information made him "very afraid."  (*Id.* at 8.)  He has been "tracked down [and]

---

[2] Because complaints by *pro se* plaintiffs are to be examined with "special solicitude," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (internal quotation marks omitted), construed liberally to raise the strongest arguments they suggest, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (internal quotation marks omitted), the Court may "consider factual allegations in *pro se* plaintiffs' preceding complaints in order to supplement those in amended complaints," *Voltaire v. Westchester Cnty. Dep't of Soc. Servs.*, No. 11-CV-8876, 2016 WL 4540837, at *3 (S.D.N.Y. Aug. 29, 2016).  Additionally, "allegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss."  *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010).  The Court will send Plaintiff copies of all unreported cases cited in this Opinion and Order.

[3] Citations to the original, First Amended, and Second Amended Complaints, Plaintiff's opposition, and Doc. 43 use the page numbers generated by the Court's electronic filing system.

hurt by Facebook showing [his G.P.S.] coordinates." (*Id.*)  His Facebook account has been under

"constant watch by authorities illegally." (FAC at 6.)  Plaintiff alleges that Defendant Facebook

"acted in concert" to deprive him of his rights and cost him "a small fortune in damage." (SAC

at 8.)

On April 27, 2019, the Orange County Sheriff's Department and the City of Newburgh

Police stopped Plaintiff as he was driving from Schenectady to Newburgh, New York. (FAC at

4.)  That same day, Defendant Brooks and her partner Detective Cerone questioned Plaintiff.

(SAC at 7.)[4]  Plaintiff alleges that Defendant Brooks told him that she had accessed his

Facebook account without a warrant and used it to track him to Schenectady. (*Id.*; FAC at 6.)

He also alleges that Brooks told him that "there are no warrant[s] issued by any judge [related to

Plaintiff's] 'Facebook account' because the fed[s] gave both [Brooks] and her partner

permission." (Compl. at 8.)  No such statements appear in the recording or transcript.  Rather,

Cerone asked Plaintiff whether he had social media and said that "[e]very single bit, every

---

[4] In connection with her motion to dismiss, Defendant Brooks offers an affidavit of counsel attaching a certified transcript of the video and audio recording of the April 27 interview, (Doc. 32 Ex. D ("Tr.")), as well as the recording itself, (*id.* Ex. E).  As discussed below, I consider the transcript because a portion of it is attached to Plaintiff's opposition papers, it is integral to the Second Amended Complaint, and Plaintiff had knowledge of the material and relied on it in framing the complaint. *See Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted).  Where the allegations of a complaint "are contradicted by . . . documents upon which the pleadings rely," the document controls and the court need not accept as true the allegations of the complaint. *See Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) (summary order); *see also Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (where documents relied on in drafting complaint contradict complaint, "the documents control and this Court need not accept as true the allegations in the amended complaint").  This is true even for *pro se* complaints. *See, e.g.*, *Knight v. City of N.Y.*, No. 19-CV-4022, 2020 WL 2115411, at *1 n.1 (S.D.N.Y. May 1, 2020).  Accordingly, where applicable, I indicate where Plaintiff's allegations are contradicted by the transcript and recording.

keystroke is – stays in the system, . . . and you know we have access to all that?"  (Tr. at 102:11-

14.)  Plaintiff said that they would need a warrant for that, and Cerone responded, "You think we

can't get that?"  (*Id.* at 15-19.)  Plaintiff then said, "I know you can get it."  (*Id.* at 20-21.)

Cerone also said that "[e]verything" on Plaintiff's phone "will come to light," (*id.* at 103:7-23),

and Brooks added, "Even if you delete it," (*id.* at 104:6-7).

On August 19, 2019, Plaintiff filed suit against Defendants Facebook and Brooks, as well

as Mark Zuckerberg, Paypal, "Intelius," and other unknown individuals and entities, bringing

claims under 42 U.S.C. § 1983 for violation of his constitutional rights and state law claims for

abuse of process, violation of his right to privacy, and infliction of emotional distress.  (Compl.)

By order dated October 10, I dismissed all claims except those against Defendants Facebook and

Brooks and granted Plaintiff leave to amend, (Doc. 7).  Defendant Brooks filed a letter

contemplating a motion to dismiss, to which Plaintiff responded, and the Court scheduled a pre-

motion conference.  (*See* Docs. 15, 18-19.)  On December 26, Plaintiff filed the First Amended

Complaint.  (FAC.)  The Court held the pre-motion conference on December 30 and scheduled

briefing on Defendant Brooks's motion to dismiss.  (Minute Entry dated Dec. 30, 2019.)  On

January 16, 2020, Defendant Facebook filed a letter contemplating a motion to dismiss, and the

Court waived the pre-motion conference requirement and granted Plaintiff leave to amend a

second time.  (Doc. 23, 25.)  On January 30, Plaintiff filed the Second Amended Complaint,

asserting federal claims under the Privacy Act and 42 U.S.C. § 1983 for violations of his Fourth

Amendment and privacy rights and conspiracy, and state law claims of abuse of process and

"infliction of emotional distress."  (SAC at 2.)  The instant motions followed.  (Docs. 31, 38.)

## II.    <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

As described above, complaints by *pro se* plaintiffs shall be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi*, 475 F. App'x at 808 (internal quotation marks and emphasis omitted), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes*, 449 U.S. at 9 (internal quotation marks omitted).  Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations that [the plaintiff] has not pled."  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## III.    DISCUSSION

### A.    Documents Properly Considered

When deciding a motion to dismiss, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss*, 762 F. Supp. 2d at 567 (internal quotation marks omitted).  A document is integral to the complaint if the complaint "relies heavily upon its terms and effect."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotations omitted).

As mentioned above, Defendant Brooks offers an affidavit of counsel attaching a certified transcript of the recording of the April 27 interview.  (Tr.)  In his opposition papers, Plaintiff explicitly cites to, (Doc. 48 ("P's Opp.") at 2), and attaches, (Doc. 43 at 40-48), pages 101 through 109 of the transcript.  Accordingly, I may consider those pages and the corresponding portion of the recording, and I consider the full transcript and recording because I may consider "the full text of documents that are partially quoted."  *In re Bausch & Lomb, Inc.*

*Sec. Litig.*, 592 F. Supp. 2d 323, 338 (W.D.N.Y. 2008).  The transcript and recording are also integral to the pleadings.  Plaintiff invites consideration of the transcript and recording because he alleges that the recording of the April 27 interview would prove his claim that Defendant Brooks illegally accessed his Facebook account.  (FAC at 5.)  Thus, his papers "rel[y] heavily" on the recording and transcript's "terms and effect."  *See Chambers*, 282 F.3d at 153 (internal quotation marks omitted).[5]

Defendant Facebook offers the declaration of its eDiscovery and Litigation Case Manager attaching ten versions of Facebook's user agreement.  (*See* Doc. 39.)  The Court need not discuss whether it can consider the user agreements because they do not affect the outcome of this motion.  *See Meisel v. Westchester County*, No. 18-CV-7202, 2020 WL 3472500, at *3 (S.D.N.Y. June 25, 2020).

### B.    Federal Claims Against Defendant Brooks

Plaintiff fails to state a claim against Defendant Brooks for any federal cause of action. The Fourth Amendment requires that "officers must generally secure a warrant before conducting" a search of data on cell phones.  *Riley v. California*, 573 U.S. 373, 386 (2014).  But Plaintiff does not plausibly allege that Brooks conducted a warrantless search.  In the First and

---

[5] In a declaration filed March 4, 2020, Plaintiff alleges that portions of the recording are inaudible and portions of the transcript are redacted.  (Doc. 43 at 1-2.)  Any inaudible portions of the recording do not make the relevant passages difficult to comprehend, and the transcript does not appear to be redacted.  The Court has listened to relevant portions of the recording itself, and the transcript is generally accurate.  It is also certified as such by the court report.  (Tr. at 154.) The only discrepancies the Court noted are that: 1) after Detective Cerone said "You think we can't get that?," he and Plaintiff spoke over one another and Detective Cerone seemed to say something to the effect of, "You think we have it?"; and 2) the Court could not hear the last two words of "I know you can get it."  (*Id.* at 20-21.)  It is immaterial whether Plaintiff said, "I know you can get it," or "I know you can," in response to Detective Cerone's comment that the officers could get a warrant.  It is likewise immaterial whether Detective Cerone added, "You think we have it?" in reference to a search warrant.

Second Amended Complaints, Plaintiff alleges that Brooks told him during the April 27 interview that she accessed his Facebook account without his consent or a warrant, (FAC at 4; SAC at 7), and did not need one because "the feds" gave her permission, (Compl. at 8), but those allegations are contradicted by the recording and transcript of the interview, which control. *See Knight*, 2020 WL 2115411, at *1 n.1. The only relevant statement of Brooks in the entire conversation is that data on cell phones is available "[e]ven if you delete it," (Tr. at 104:6-7), which is not the same as telling Plaintiff that she accessed his Facebook account. There is no portion of the conversation in which Brooks even arguably tells Plaintiff that she tracked him via Facebook or otherwise accessed the contents of his account.

Plaintiff also argues that Detective Cerone made it clear that he and Brooks accessed Plaintiff's account. (P's Opp. at 2.) Cerone told Plaintiff, referring to his cell phone, that "[e]very single bit, every keystroke is – stays in the system, stays in there and you know we have access to all that?" (Tr. at 102:11-14.) Plaintiff said Cerone would need a warrant, and when Cerone asked, "You think we can't get that?," Plaintiff answered, "I know you can get it." (*Id.* at 102:16-21.) These statements do not plausibly support the inference that Brooks searched Plaintiff's Facebook account without a warrant. Rather, the only reasonable possible readings are that Plaintiff's phone had not been searched but Cerone wanted Plaintiff to understand that the officers would be able to get a warrant to do so, or that the phone had been searched with a warrant. Further, even if Cerone's remarks could somehow be read as suggesting that a warrantless search had taken place, there is no basis for attributing that conduct to Brooks. There is also no suggestion in the conversation that the detectives would not need a warrant because they had permission from federal agents to search Plaintiff's phone.

8

Finally, Plaintiff contends that the fact that he was stopped on the highway between Schenectady and Newburgh proves that Brooks accessed his Facebook account.  (FAC at 4.) There is no statement during the interview suggesting as much, and even granting Plaintiff the special solicitude to which he is entitled, he does not allege any facts explaining why he believes this to be so.  I cannot invent factual allegations that he has not pleaded.  *See Chavis*, 618 F.3d at 170.

Because Plaintiff has not plausibly alleged that Defendant Brooks accessed his Facebook account, he has not alleged that Brooks conducted a search.  He also has not plausibly alleged that any search that might have occurred was warrantless.  Thus Plaintiff has failed to state a claim against Brooks for violation of his Fourth Amendment rights.

There is "a recognized constitutional right to privacy in personal information."  *Doe v. City of N.Y.*, 15 F.3d 264, 267 (2d Cir. 1994).  But even assuming that information shared on Facebook is entitled to constitutional protection, Plaintiff has not plausibly alleged that Defendant Brooks accessed his information, disseminated it, or did anything that could be considered a violation of that right.  Accordingly, Plaintiff has failed to state a claim against Brooks for violation of his constitutional right to privacy.

To the extent Plaintiff intended to bring a claim against Defendant Brooks under the Privacy Act, 5 U.S.C. § 552a, that statute provides no private right of action against "an official or employee of a municipal or state, rather than a federal, agency."  *Pennyfeather v. Tessler*, 431 F.3d 54, 56 (2d Cir. 2005).

Thus, all of Plaintiff's claims against Defendant Brooks arising under federal law are dismissed.[6]

**C.**      **Federal Claims Against Defendant Facebook**

Plaintiff fails to state a claim against Defendant Facebook for any federal cause of action.

To the extent Plaintiff intended to allege claims against Facebook for violation of his rights secured by the Fourth Amendment, those claims are dismissed because the Fourth Amendment only applies to government action, and Facebook is a private entity. *See United States v. DiTomasso*, 932 F.3d 58, 67 (2d Cir. 2019). Any purported claim arising under the Privacy Act is dismissed for the same reason. *See Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008).

To the extent Plaintiff meant to allege a § 1983 conspiracy claim, that claim is also dismissed.[7] His vague, boilerplate assertions are conclusory and unsupported by facts, (*see* FAC at 7 ("Facebook has assisted [and] conspired, acted in concert"")); SAC at 8 ("[Facebook] has

---

[6] On March 4, 2020, Plaintiff filed a document entitled "notice of motion" requesting that the Court order discovery of material housed on Facebook's servers. (Doc. 44.) He also sought a disc of the recorded interview. (*Id.*) He made a similar request on March 18, 2020, requesting that the Court obtain and review his Facebook accounts. (Doc. 46.) With respect to the request for discovery of his Facebook material, "as *Iqbal* makes clear, a plausible claim must come *before* discovery, not the other way around." *Angiulo v. County of Westchester*, No. 11-CV-7823, 2012 WL 5278523, at *3 n.4 (S.D.N.Y. Oct. 25, 2012) (emphasis in original). Accordingly, that application is denied. As for the disc, Defendant Brooks sent Plaintiff the certified transcript but not the disc, because Plaintiff would not be allowed to have the disc in the Orange County Jail, where he is incarcerated. (*See* Doc. 33 at 5 n.1.) There appears to be no harm to Plaintiff from his unfortunate inability to possess the disc, because the court reporter certified the accuracy of the transcript and because it appears accurate to the Court. *See* n.5 above.

[7] A § 1983 conspiracy claim does not stand alone without a corresponding constitutional violation; rather, it is a theory that "will enable a plaintiff to bring suit against purely private individuals" for violation of constitutional rights. *Porat v. Lincoln Towers Cmty. Ass'n*, No. 04-CV-3199, 2005 WL 646093, at *7 (S.D.N.Y. Mar. 21, 2005) (internal quotation marks omitted).

assisted [and] acted in concert")), and thus his conspiracy claim is properly dismissed, *see Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (internal quotation marks omitted); *Vega v. Artus*, 610 F. Supp. 2d 185, 202-03 (N.D.N.Y. 2009).  Further, "if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights."  *Vega*, 610 F. Supp. 2d at 203 (internal quotation marks omitted).

The gravamen of Plaintiff's claims against Defendant Facebook is that Facebook failed to protect his data, which allowed third parties to access and misuse his personal information and the authorities to surveil him.  (*See* SAC at 5-6; FAC at 6.)  But Plaintiff has not identified a cause of action that could cover this injury and, as discussed, he has not plausibly alleged that the alleged third-party conduct – at least as it relates to Defendant Brooks and Detective Cerone – in fact occurred.

Accordingly, Plaintiff's federal law claims against Defendant Facebook are dismissed.

**D.    State Law Claims**

In addition to his federal claims, I construe Plaintiff's original, First Amended, and Second Amended Complaints to assert intentional and negligent infliction of emotional distress, abuse of process, conspiracy, and loss of business opportunities claims under state law.  The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that all of the claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state

law causes of action.  *See id.* (citing 28 U.S.C. § 1367(c)(3)).  Accordingly, Plaintiff's state law

claims are dismissed without prejudice.

## IV.   <u>LEAVE TO AMEND</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted).

> Leave to amend, though liberally granted, may properly be denied for:  "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."

*Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S.

178, 182 (1962)).

Plaintiff has already amended his Complaint, after having the opportunity to review pre-

motion letters from each Defendant stating the grounds on which she or it would move to

dismiss, (Docs. 15, 23), as well as having the benefit of the Court's observations during the pre-

motion conference, (Minute Entry dated Dec. 30, 2019).[8]  In general, a plaintiff's failure to fix

deficiencies in the previous pleading, after being provided notice of them, is alone sufficient

ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,

898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his

complaint when he first amended, he clearly has no right to a second amendment even if the

proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy

district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.")

---

[8] Plaintiff has amended twice, but he filed the First Amended Complaint after having had the opportunity to review Brooks's pre-motion letter but not Facebook's.

(internal quotation marks, alteration, and footnote omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

After the motions to dismiss were fully briefed, Plaintiff filed a letter seeking an update on his case.  (*See* Doc. 56.)  That letter contained a factual narrative related to incidents occurring while Plaintiff has been incarcerated at Orange County Jail.  Because the facts are divorced from anything having to do with Defendants, Plaintiff's personal information, or the April 27 interview, it does not appear that Plaintiff was attempting to amend his complaint again without leave of court.  But assuming that Plaintiff did intend the letter to be a proposed Third Amended Complaint, I find that allowing Plaintiff to amend a third time would be futile.  The facts contained in the letter have nothing to do with the incidents described in the First and Second Amended Complaints and would have no effect on the plausibility of any of Plaintiff's claims.  Accordingly, accepting the Third Amended Complaint – even if there were some excuse for attempting to file it after the motion to dismiss was fully briefed – would not change the outcome here.

Plaintiff has not asked to amend again or suggested that he is in possession of facts that would cure the deficiencies identified above.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result), *reh'g denied*, 645 F.3d 519 (2d Cir. 2011) (*per curiam*).  Accordingly, I decline to grant Plaintiff leave to amend *sua sponte*.

## V.      CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED.  The federal claims are dismissed with prejudice and the state claims are dismissed without prejudice.  Defendant Facebook's motion to transfer venue is DENIED as moot.  The Clerk of Court is respectfully directed to send a copy of this Opinion and Order to Plaintiff, terminate the pending motions, (Docs. 31, 38), and close the case.

**SO ORDERED.**

Dated: September 21, 2020
          White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

14